UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
GLYNNIS GONZALES, KRIZIA JENNIFER
FRANCISCO, BOPEEP G. JACAR, and :
LEA C. FORMELOZA, individually and on behalf
of all others similarly situated, : **CLASS ACTION COMPLAINT**

         Plaintiffs, :

                        Plaintiffs Demand
       -vs- : a Jury Trial

UNITED STAFFING REGISTRY, INC. d/b/a :
United Home Care and BENJAMIN H. SANTOS,
                                      :
         Defendants.
----------------------------------------------------------------X

Plaintiffs GLYNNIS GONZALES, KRIZIA JENNIFER FRANCISCO, BOPEEP G. JACAR, and LEA C. FORMELOZA, by their undersigned attorneys, on behalf of themselves and all others similarly situated, as and for their complaint against defendants UNITED STAFFING REGISTRY, INC. d/b/a United Home Care and BENJAMIN H. SANTOS, allege as follows:

1. This is an action for damages, injunctive relief, declaratory relief, and other remedies for violations of the Trafficking Victims Protection Act (TVPA), 18 U.S.C. § 1589 *et seq.*, and for breach of contract under New York law.

2. Defendants are foreign labor recruiters who have recruited more than 100 nurses from the Philippines to work for the defendants in this District under contracts of indentured servitude. The defendants' standard employment contracts contain draconian penalties designed to keep Filipino nurses working for the defendants, including: (a) a $90,000.00 indenture that the nurse must either pay or work off before she will be permitted to stop working; (b) a non-compete penalty that purports to prohibit the nurse from working in the healthcare field

1

anywhere in the United States for a period of three years if she fails to pay or work off the $90,000.00 indenture; and (c) an express, written threat in the contracts that the defendants will report the nurse to Immigration and Customs Enforcement (ICE) and have her deported if she stops working before she pays or works off the $90,000.00 indenture.

3.  While the defendants characterize the $90,000.00 indenture as "liquidated damages," there is in fact no basis for this claim. To the contrary, the defendants pay nothing towards the recruitment, visa applications, or training of the nurses. Indeed, the defendants not only require the nurses to pay all of these costs, but also charge them $100.00 each time the defendants' staff speaks to the nurses on the telephone, $150.00 for each letter sent by FedEx, and $320.00 each for a cursory medical examination by defendant Benjamin Santos's wife.

4.  Once the Filipino nurses begin working in the United States, the defendants refuse to pay them the prevailing wages required by their employment contracts. To keep the nurses from leaving, the defendants threaten the nurses with serious harm, including threats to enforce the draconian penalties in the employment contract and have the nurses deported.

5.  On behalf of themselves and all other Filipino nurses employed by the defendants at any time since November 20, 2009, plaintiffs seek: compensatory and punitive damages for violations of the TVPA; compensatory damages and pre- and post-judgment interest at the statutory rate of 9% for breach of contract; an injunction prohibiting defendants from threatening to enforce or enforcing the indenture and non-compete clauses in the employment contracts; a declaration that the indenture and non-compete clauses are unenforceable under the TVPA, the 13th Amendment to the U.S. Constitution, 42 U.S.C. § 1994, and New York law; an award of reasonable attorneys' fees and costs as authorized by 18 U.S.C. § 1595(a); and such other relief as the Court deems just and proper.

**Jurisdiction and Venue**

6. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question) and 18 U.S.C. § 1595(a) (civil trafficking). This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367 because the state law claims form part of the same case or controversy as the federal law claims.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to plaintiffs' claims occurred in this District.

**The Parties**

8. Plaintiff GLYNNIS GONZALES is a Registered Nurse licensed to practice in the State of New York and an employee of the defendants. She is a citizen of the Republic of the Philippines and resides in Queens County, New York.

9. Plaintiff KRIZIA JENNIFER FRANCISCO is a Registered Nurse licensed to practice in the State of New York and an employee of the defendants. She is a citizen of the Republic of the Philippines and resides in Queens County, New York.

10. Plaintiff BOPEEP G. JACAR is a Registered Nurse licensed to practice in the State of New York and an employee of the defendants. She is a citizen of the Republic of the Philippines and resides in Queens County, New York.

11. Plaintiff LEA C. FORMELOZA is a Registered Nurse licensed to practice in the State of New York and an employee of the defendants. She is a citizen of the Republic of the Philippines and resides in Queens County, New York.

12. Defendant UNITED STAFFING REGISTRY, INC. d/b/a United Home Care ("United Staffing") is a corporation organized under the laws of the State of New York with a principal place of business 77-04 Broadway, Elmhurst (Queens County), New York.

13. Defendant BENJAMIN H. SANTOS ("Santos") is the owner, President, and Chief Executive Officer of defendant United Staffing. Upon information and belief he is a resident of Queens County New York.

14. Defendant Santos exercised complete domination and control of defendant United Staffing in respect to the conduct alleged in this complaint, including violations of the Trafficking Victim's Protection Act designed to coerce the continued performance of plaintiffs and other Filipino nurses under their employment contracts notwithstanding the defendants' failure to pay the required prevailing wages.

15. Defendant Santos used his complete domination and control of defendant United Staffing to commit wrongs against plaintiffs and other Filipino nurses, including violations of the Trafficking Victim's Protection Act designed to coerce the continued performance of plaintiffs and other Filipino nurses under the contracts notwithstanding the defendants' failure to pay the required prevailing wages.

16. Defendants United Staffing and Santos are associated in fact and comprise a venture as that term is used in the Trafficking Victims Protection Act, 18 U.S.C. §§ 1589 and 1595.

**Facts Common to All Claims**

17. For more than 10 years, defendants United Staffing and Santos have recruited Filipino nurses to work for their staffing agency in New York. Throughout this time, the defendants have required the Filipino nurses to execute a standard employment contract.

18. On or about March 15, 2018, plaintiff Glynnis Gonzales signed the defendants' standard employment contract to work for the defendants in New York. The contract was counter-signed by defendant Santos as President and CEO of defendant United Staffing.

19. On or about June 30, 2018, plaintiff Krizia Jennifer Francisco signed the defendants' standard employment contract to work for the defendants in New York. The contract was counter-signed by defendant Santos as President and CEO of defendant United Staffing.

20. On or about March 25, 2019, plaintiff Bopeep G. Jacar signed the defendants' standard employment contract to work for the defendants in New York. The contract was counter-signed by defendant Santos as President and CEO of defendant United Staffing.

21. On or about March 26, 2019, plaintiff Lea C. Formeloza signed the defendants' standard employment contract to work for the defendants in New York. The contract was counter-signed by defendant Santos as President and CEO of defendant United Staffing.

**A. Defendants' Pattern and Practice of Paying Less Than the Prevailing Wages Required by the Employment Contracts**

22. The defendants' standard employment contract provides that the nurses will be paid "prevailing wages" for a Registered Nurse based on the location of the hospital or health care facility where the nurse was assigned.

23. Plaintiff Glynnis Gonzales began working for the defendants on September 25, 2018 at Margaret Tietz Nursing and Rehabilitation Center in Queens.

24. Plaintiff Gonzales was paid less than the prevailing wage on either an hourly or annual salary basis.

25. Plaintiff Krizia Jennifer Francisco began working for the defendants on September 10, 2018 at Margaret Tietz Nursing and Rehabilitation Center in Queens.

5

26. Plaintiff Francisco was paid less than the prevailing wage on either an hourly or annual salary basis.

27. Plaintiff Bopeep G. Jacar began working for the defendants on June 12, 2019 at Brookhaven Rehabilitation & Health Care Center in Far Rockaway, New York.

28. Plaintiff Jacar was paid less than the prevailing wage on either an hourly or annual salary basis.

29. Plaintiff Lea C. Formeloza began working for the defendants on June 12, 2019 at Brookhaven Rehabilitation & Health Care Center in Queens.

30. Plaintiff Formeloza was paid less than the prevailing wage on either an hourly or annual salary basis.

31. Upon information and belief, the defendants engaged in a policy and practice of paying Filipino nurses less than the prevailing wages required by their employment contracts.

**B. Defendants' Pattern and Practice of Threatening Serious Harm to Prevent Filipino Nurses from Leaving Their Employ**

32. The defendants have engaged in a deliberate scheme, pattern and plan intended to cause plaintiffs and other Filipino nurses to believe that they would suffer serious harm if they tried to leave the defendants' employ or find other employment.

*1. Defendants' Illegal $90,000.00 Indenture*

33. The defendants' standard employment contract provides that the Filipino nurses cannot stop working until they either pay or work off a $90,000.00 indenture disguised as "liquidated damages."

34. The $90,000.00 indenture is designed to coerce the nurses into continuing their employment with the defendants.

35. The amount of the $90,000 indenture is disproportionate to the actual costs incurred by the defendants.

36. The $90,000 indenture is disproportionate to the compensation paid to the Filipino nurses.

37. The purpose of the $90,000.00 indenture is not to compensate defendants for actual or potential damages.

38. The purpose of the $90,000.00 indenture is to obtain and provide plaintiffs' labor and services to defendants and their clients.

39. The purpose of the $90,000.00 indenture is to deter plaintiffs from leaving their employment with defendants.

40. Defendants are and were able to calculate the amount of actual damages they would suffer in the event a Filipino nurse breached the employment contract.

41. Plaintiffs reasonably feared that defendants would sue them for the $90,000 indenture and other provisions in the employment contract.

### 2. *The Nationwide, Three-Year Non-Compete Penalty*

42. The defendants' standard employment contract includes a non-compete penalty that applies only if the nurse leaves before paying or working off the $90,000.00 indenture. In that event, the contract purports to prohibit the nurse from working as a nurse, practicing nursing, working as a physician assistant, or otherwise practicing the art of/science of nursing anywhere in the United States for a period of three years.

43. The temporal, geographic, and substantive scope of the non-compete penalty creates an unreasonable restraint on plaintiffs' ability to practice their profession.

44. The temporal, geographic, and substantive scope of the non-compete penalty is broader than necessary to protect any legitimate business interest of defendants.

45. The purpose of the non-compete penalty is not to protect any legitimate business interest of defendants.

46. The purpose of the non-compete penalty is to obtain and provide plaintiffs' labor and services to defendants and their clients.

47. The purpose of the non-compete provisions is to deter plaintiffs from leaving their employment with defendants.

48. Plaintiffs reasonably fear that potential employers will not hire them as long as defendants may sue them and any potential employers for violation of the three-year, nationwide non-compete penalty in the employment contract.

49. Plaintiffs reasonably fear that defendants will sue them for breach of the non-compete penalty in the employment contract if they tried to practice her profession with any other employer in the United States

50. Plaintiffs reasonably fear that the cost of defending themselves against defendants' threatened legal actions will cause them to suffer serious harm.

51. The $90,000.00 indenture and non-compete penalty are part of a contract of adhesion that defendants obtained as a result of unequal sophistication and bargaining power.

### *3.     Defendants' Threats to Have Plaintiffs Deported*

52. The defendants' standard employment contract threatens the Filipino nurses with deportation if they stop working for the defendants before paying or working off the $90,000.00 indenture. Specifically, the defendants threaten that, if a Filipino nurse leaves before paying or working off the $90,000.00 indenture, the nurse will be reported "to the United States

Citizenship and Immigration Services (USCIS) and the Immigration and Customs enforcement [sic] (ICE)," and that "such report may lead to the termination of the Permanent Resident Card (Green Card) and deportation of the EMPLOYEE from the United States."

53. Upon information and belief, the defendants have brought and threatened to bring baseless lawsuits against Filipino nurses to keep them from exercising their right to stop working for the defendants and seek other employment.

54. The defendants' baseless and abusive lawsuits against Filipino nurses are part of a longstanding pattern and practice designed to induce fear and prevent Filipino nurses from seeking other employment.

55. Upon information and belief, the defendants' actual and threatened legal actions were pursued for the purpose of coercing Filipino nurses to continue working for the defendants.

56. Upon information and belief, the defendants' actual and threatened legal actions were pursued with the intent to cause all Filipino nurses to believe that they would suffer serious psychological, financial or reputational harm if they did not continue working for defendants.

57. As a direct and proximate result of the defendants' wrongful conduct, plaintiffs and other Filipino nurses continued working for the defendants at rates of pay less than the prevailing wages required by their employment contracts.

## Class Action Claims

58. Defendants' conduct described above was part of and resulted from policies and practices that the defendants applied to all Filipino nurses they recruited and employed. Plaintiffs therefore bring the claims alleged herein as a class action pursuant to Rules 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure.

59. The class is comprised of all Filipino nurses who were employed by or with the defendants within the United States at any time on or after October 29, 2009.

60. The claims of the class are properly brought as a class action pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure because the defendants have acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

61. The claims of the class are properly brought as a class action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure for the following reasons:

   a. Numerosity: The potential class members are so numerous that joinder of all class members is impracticable.

   b. Commonality: There are questions of law and fact common to plaintiffs and the class that predominate over any questions affecting only individual class members. These common questions of law and fact include:

      1. whether defendants engaged in a policy and practice of failing to pay Filipino nurses the prevailing wages required by their standard employment contract;

      2. whether defendants engaged in a policy and practice of using threats of baseless and abusive legal action to coerce Filipino nurses to continue working for them;

      3. whether the indenture or so-called "liquidated damages" clause is unenforceable;

4. whether defendants engaged in a policy and practice of using an unenforceable indenture or contract termination penalty to coerce Filipino nurses to continuing working for them;

5. whether the non-compete clause is unenforceable;

6. whether defendants engaged in a policy or practice of using the non-compete clause to coerce Filipino nurses to continue working for them;

7. whether defendants engaged in a policy or practice of using threats of deportation to coerce Filipino nurses to continue working for them;

8. whether defendants are liable to the class;

9. whether the class can be made whole by the payment of damages; and

10. whether defendant Santos is personally liable for the damages sustained by class members.

c. Typicality: Plaintiffs' claims are typical of the claims of the class. Plaintiffs and all class members sustained injuries and damages arising out of and proximately caused by defendants' policies and practices of not paying the prevailing wages and using threats of baseless and abusive legal action to intimidate class members.

d. Adequacy of Representation: Plaintiffs will fairly and adequately represent the interest of class members. Plaintiffs' counsel are competent and experienced in litigating complex contract, employment, and Trafficking Victims Protection Act claims, including class actions.

e. Superiority: A class action is superior to other available means for fair and efficient adjudication of this controversy. Each class member has been

damaged and is entitled to recovery because of defendants' illegal policies and practices. Individual joinder of all class members is not practicable, and questions of law and fact common to the class predominate over any questions affecting only individual class members. Class action treatment will allow those similarly situated persons to litigate their claims in the manner that is most efficient and economical for the parties and the judicial system.

**FIRST CLAIM FOR RELIEF AGAINST
ALL DEFENDANTS FOR VIOLATIONS OF THE
TRAFFICKING VICTIMS PROTECTION ACT (TVPA)
18 U.S.C. § 1595**

62. Plaintiffs repeat and reallege each and every allegation in paragraphs 1 through 61 above as if fully restated herein.

63. Defendants knowingly provided and obtained the labor and services of plaintiffs and other class members by means of the abuse or threatened abuse of law or legal process, including without limitation the use or threatened use of a law or legal process in order to exert pressure on plaintiffs and other class members to continue working for the defendants and to refrain from seeking employment elsewhere.

64. Defendants knowingly provided and obtained the labor and services of plaintiffs and other class members by means of serious harm and threats of serious harm to plaintiffs and other class members, including without limitation psychological, financial, or reputational harm that was sufficiently serious to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm.

65. Defendants knowingly provided and obtained the labor and services of plaintiffs and other class members by means of a scheme, plan, or pattern intended to cause plaintiffs and

other class members to believe that, if they did not perform such labor or services, they would suffer serious harm, including without limitation psychological, financial, or reputational harm that was sufficiently serious to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm.

66. Defendants knowingly benefitted, financially or by receiving other value, from participation in a venture which has engaged in the providing or obtaining of labor or services by the means described above, knowing or in reckless disregard of the fact that the venture has engaged in the providing or obtaining of labor or services by such means.

67. Defendants knowingly recruited, transported, provided, and obtained plaintiffs and class members for labor or services in violation of 18 U.S.C. §§ 1589, 1590, 1594(a), and 1594(b).

68. By reason of the conduct described above, defendants were perpetrators of violations of 18 U.S.C. §§ 1589, 1590, 1594(a), and 1594(b).

69. Plaintiffs and the other class members suffered damages as a direct and proximate result of defendants' conduct.

70. Plaintiffs and the other class members are entitled to compensatory and punitive damages in amounts to be determined at trial, together with reasonable attorneys' fees and the costs of this action.

### SECOND CLAIM FOR RELIEF AGAINST ALL DEFENDANTS FOR CONSPIRING TO VIOLATE THE TRAFFICKING VICTIMS PROTECTION ACT (TVPA) 18 U.S.C. § 1594(b)

71. Plaintiffs repeat and reallege each and every allegation in paragraphs 1 through 70 above as if fully restated herein.

72. Defendants conspired with one another to violate 18 U.S.C. §§ 1589 and 1590.

73. Defendants United Staffing and Santos agreed to provide and obtain the labor and services of plaintiffs and the other class members by means of the abuse or threatened abuse of law or legal process, including without limitation the use or threatened use of a law or legal process in order to exert pressure on plaintiffs and other class members to continue working for the defendants or to refrain from seeking employment elsewhere.

74. Defendants United Staffing and Santos agreed to provide and obtain the labor and services of plaintiffs and other class members by means of serious harm and threats of serious harm to plaintiffs and other class members, including without limitation psychological, financial, or reputational harm that was sufficiently serious to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm.

75. Defendants United Staffing and Santos agreed to provide and obtain the labor and services of plaintiffs and other class members by means of a scheme, plan, or pattern intended to cause plaintiffs and other class members to believe that, if they did not perform such labor or services, they would suffer serious harm, including without limitation psychological, financial, or reputational harm that was sufficiently serious to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm.

76. Defendants United Staffing and Santos agreed to benefit, financially or by receiving other value, from participation in a venture which has engaged in the providing or obtaining of labor or services by the means described above, knowing or in reckless disregard of

the fact that the venture has engaged in the providing or obtaining of labor or services by such means.

77. Defendants United Staffing and Santos agreed to recruit, transport, provide, and obtain plaintiffs and class members for labor or services in violation of 18 U.S.C. §§ 1589 and 1590.

78. Each of the defendants engaged in at least one overt act in furtherance of the conspiracy, including:

    a. Defendant United Staffing required plaintiffs and other class members to execute contracts with unenforceable contract termination and non-compete provisions, and threatened to commence legal action to enforce these provisions, for the purpose of coercing plaintiffs and class members to continue working;

    b. Defendant Santos warned, cautioned, and threatened plaintiffs and other class members that they would be sued for the full contract termination penalty if they tried to stop working for the defendants.

79. Each of the defendants intentionally engaged in these acts and additional acts in furtherance of their agreed plan to deny plaintiffs and the other class members the compensation they were entitled to under their employment agreements and to coerce plaintiffs and the other class members to continue working for the defendants and not to seek work elsewhere.

80. Plaintiffs and the other class members suffered damages as a direct and proximate result of defendants' conspiracy.

81. Plaintiffs and the other class members are entitled to compensatory and punitive damages in amounts to be determined at trial, together with reasonable attorneys' fees and the costs of this action.

## THIRD CLAIM FOR RELIEF AGAINST
## ALL DEFENDANTS FOR ATTEMPTING TO VIOLATE THE
## TRAFFICKING VICTIMS PROTECTION ACT (TVPA)
## 18 U.S.C. § 1594(a)

82. Plaintiffs repeat and reallege each and every allegation in paragraphs 1 through 81 above as if fully restated herein.

83. Defendants attempted to violate 18 U.S.C. §§ 1589 and 1590.

84. Plaintiffs and the other class members suffered damages as a direct and proximate result of defendants' attempts to violate 18 U.S.C. §§ 1589 and 1590.

85. Plaintiffs and the other class members are entitled to compensatory and punitive damages in amounts to be determined at trial, together with reasonable attorneys' fees and the costs of this action.

## FOURTH CLAIM FOR RELIEF
## AGAINST ALL DEFENDANTS
## FOR BREACH OF CONTRACT

86. Plaintiffs repeat and reallege each and every allegation in paragraphs 1 through 85 above as if fully restated herein.

87. Plaintiffs and the other class members entered into valid and binding employment contracts with defendants.

88. Plaintiffs and the other class members substantially performed under the contracts.

89. Defendants breached the contracts by failing to pay plaintiffs and other class members the prevailing wages as of the dates they started working under the contracts.

90. Plaintiffs and the other class members suffered damages as a direct and proximate result of the breach.

91. Plaintiffs and the other class members are entitled to compensatory damages for breach of contract in amounts to be determined at trial.

### FIFTH CLAIM FOR RELIEF
### AGAINST ALL DEFENDANTS
### FOR DECLARATORY JUDGMENT

92. Plaintiffs repeat and reallege each and every allegation in paragraphs 1 through 91 above as if fully restated herein.

93. The contract termination fee and non-compete clause are unenforceable under the TVPA.

94. The contract termination fee and non-compete clause are unenforceable under the 13th Amendment to the United States Constitution.

95. The contract termination fee and non-compete clause are unenforceable under the Anti-Peonage Law, 42 U.S.C. § 1994.

96. The contract termination fee and non-compete clause are unenforceable under New York law.

97. Plaintiffs and the class members have a definite and concrete dispute with defendants concerning the enforceability of the contract termination fee and non-compete clause.

98. The dispute touches the legal relations of parties having adverse legal interests.

99. The dispute is real and substantial.

100. The dispute admits of specific relief through a decree of a conclusive character.

101. The dispute involves a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

### **Jury Demand**

102. Plaintiffs are entitled to and demand a jury trial.

## Prayer for Relief

**WHEREFORE** plaintiffs Glynnis Gonzales, Krizia Jennifer Francisco, Bopeep G. Jacar, and Lea C. Formeloza request judgment on behalf of themselves and all others similarly situated, awarding them: compensatory and punitive damages for violations of the TVPA; compensatory damages and pre- and post-judgment interest at the statutory rate of 9% for breach of contract; an injunction prohibiting defendants from threatening to enforce or enforcing the indenture and non-compete clauses in the employment contracts; a declaration that the indenture and non-compete clauses are unenforceable under the TVPA, the 13th Amendment to the U.S. Constitution, 42 U.S.C. § 1994, and New York law; an award of reasonable attorneys' fees and costs as authorized by 18 U.S.C. § 1595(a); and such other relief as the Court deems just and proper.

Dated: New York, New York  
November 22, 2019

THE HOWLEY LAW FIRM P.C.

By: _____  
John J.P. Howley  
Leandro B. Lachica  
*Attorneys for Plaintiffs*  
350 Fifth Avenue, 59th Floor  
New York, New York 10118  
(212) 601-2728